Good morning, your honors. May it please the court. Again, this is Anastasi Marku on behalf of Mr. Beckman. I wanted to begin by giving a short outline of what I intend to present in oral argument. I'm not going to be discussing some of the evidentiary challenges that were made based on the rules of evidence that we believe that the court improperly admitted. I'd like to rely on my briefs for those arguments. Instead, I'd like to focus on the Fourth Amendment challenge and then the challenges to the convictions in the counts 1 through 12 on both the First Amendment argument and the venue argument because they're interrelated in my opinion. Regarding the Fourth Amendment argument, I'll make it as simple as I can. Fundamentally, the search in this case was for the evidence found in a particular Yahoo application called Yahoo Messenger. That is a very particular type of application that is described briefly in the application for search warrant. What the affidavit fails to state in any way is that the Yahoo application, Yahoo Messenger, that Yahoo routinely, regularly, or even occasionally saves and or stores information that is transmitted through that particular service. So the underlying messenger service, it's you log in and then people communicate via the internet through chat messaging, video messaging. There's also a web type service that's available through that. The problem that we have in the search warrant, it spends a lot of time talking about generalities, about how sometimes these types of servers or services can store information. We're not disputing that generally Yahoo has the capacity to store. That's not the point. The point in this particular search warrant is they were looking for evidence in a particular location under a particular application called Yahoo Messenger and there simply was no allegation in the application that Yahoo Messenger, through the Yahoo service, that Yahoo in fact stores and or saves information in that particular application. So it's just utterly lacking in that point the nexus between the alleged criminal activity and the place to be searched, which is a particular application in the broader Yahoo company. So I'm not totally following this. We're on the same page. All you need is probabilities, right? Yes, Your Honor. So how does this argument defeat that? I mean, it's probabilities. It's not certitude. It's not beyond a reasonable doubt at this stage in the case. So how does this point defeat the probabilities point? There's not even an allegation that Yahoo Messenger probably has information in the application. What it says is generally Yahoo has the capacity to store information. Of course, it's a computer system. But, I mean, maybe this isn't a good analogy, but, I mean, if you say a corporation has something and what you're really saying is one of its subsidiaries has it, you would require that in the warrant? I mean, that's what seems to be the analogy here, and I guess I would have said, no, at this point in the game, it's enough that you say the corporation, the umbrella organization has it. You have to spell out the sub or each refinement of it. Is that not a good analogy here? It can be. It could be. If the analogy that the court states in the application, it says, yes, in fact, this corporation does store information and, in fact, that corporation has a subsidiary and, in fact, that subsidiary was used. I don't think the warrant has to spell out the subsidiary point. That's what I'm saying. It suffices to say the umbrella organization, the corporation itself has this. I'm not sure the analogy holds, Your Honor, because you're talking about a completely different type of service. You're talking about online chatting, not emails back and forth. You're talking about video conferencing. That is a particular type of information that there needs to be additional information that, in fact… But why wouldn't it suffice to say in a warrant as to an iPhone, the iPhone contains these types of images but doesn't spell out whether it's in the chat part, the messaging part, or the email part, or God knows whatever other part iPhones have. I would have thought it's fine if you say the iPhone has it. It has it. I don't believe that that's… Tell me a case. Tell me a case that says that doesn't work. I just would have thought that would have been pretty obvious. I don't believe that it's a case issue, Your Honor. It's about the basic premise of how information is stored. All they're talking about is that Yahoo has the capacity to store information. That is completely separate from whether or not in a particular use any of that information is ever stored at any time. That's a completely separate question. I don't know if I have a good enough analogy for it, but when you're talking about separate types of… But this is an unusual type of information. You're talking about real-time chatting. And there's no allegation anywhere that they in any way at any time in any form store that type of information. And if they don't have that type of allegation anywhere, I don't see how that establishes probable cause to go into these accounts. Your problem is with the type of communication that's being sent and that there's nothing in the affidavit that says that this type of information is stored? That's correct. And it's inherent. I may have not cleared this up in the brief, but it's inherent in the way Yahoo Messenger is used. I'm fully aware of it because I tried the case. Mr. Lewis is fully aware of it because he tried the case. But it is a live back-and-forth chatting. For instance, if you're… I understand that, but that's not your point. Your point is the storage point. But didn't the affidavit also say that they have the capacity to store these things and that the agent communicated with them and asked them to keep whatever they have? It said that they have the capacity to store information and data. It doesn't say that it stores real-time chat messaging that's going on back-and-forth and or real-time video conferencing that's going back-and-forth. It's that type of communication and whether or not Yahoo ever stores that type of information. I think I've made my point clear. I understand the courts disagree or seem to disagree with that point, but it's the type of information, Your Honor. It's much different than email communications. I understand that, but did they not ask Yahoo to save it before they got the search warrant? They sent a letter to preserve any and all information that existed that is not the same as saying that the information existed at all. Existed. Okay. So that's your problem. Okay. Yes. I mean, I fully acknowledge they did everything possible to preserve information if that information ever was stored and or reserved. And that's something that they're entitled to do, I believe. I'm not disputing that. This whole preservation point, I'm a little suspicious about whether it has to be mentioned in the affidavit. So just go back to the old world of paper. We have information that there's these documents, paper documents, at the corporate headquarters, and someone saw them and they have this, implicates the corporation in this bad conduct. So you have the warrant that says the person saw it, it was two months ago, it's in this room. You then have to add, oh, we also have information that the corporation preserves its stuff for a year. You don't have to do that. I believe that's where your analogy fails, Your Honor. Because you started off with a proposition or the supposition that, in fact, those papers existed to begin with. And we do not have any information in this case that, in fact, that information exists other than in real-time communications, and it's gone after that's done. We don't have any information that that paper exists. But there's a record. There's no indication that there's a record. A paper's different. It's there. Someone can see. Exactly right. And if there was an analogy or if there was a statement in this case, the assumption is that everything electronic is somewhere forever. It would have been if they had online chatting. I'm not sure that's the case, Your Honor. So the only other thing I would like to address, I have a little time remaining, is I raised an argument in my brief regarding the First Amendment in the venue, and I'll make it as clear as I possibly can and as quickly as I can. My argument is premised on a fundamental proposition that, if the jury found Mr. Beckman not guilty of production counts, which the jury did in Counts 1 through 12, Count 5 is a different allegation, but Counts 1 through 4 and 7 through 12, it's my argument that the government is precluded at this point in arguing any of the ultimate facts that were decided by the jury in those not-guilty verdicts. If that is true, the only evidence left in this case are chat messages. What authority do you have for that proposition? What I have, Your Honor, is the Ash case and the Yeager cases, which clearly state that they're not allowed to re-litigate whether or not that applies to— This isn't re-litigating. I mean, you're arguing, I think, in effect, the verdicts are inconsistent, that if they found the allegations of attempt to be consistent, they should have found the completed offense as well. But our law is quite clear that a jury can have inconsistent verdicts. I'm not arguing that, Your Honor. In an inconsistent verdict, it's where it's necessarily are inconsistent. Well, isn't that what you're arguing? It's necessarily the findings for the completed offense are necessarily required for the attempted offenses? No, Your Honor, because there can be many types of instances in which a person takes positive steps towards the completion of an offense but doesn't actually complete the offense. That's how the jury finds it, and they find them not guilty of the completed offense. And they can still be found guilty of the attempt. I'm not claiming that the jury in any way was inconsistent. Not at all. What I'm saying is there's a difference between whether or not I'm challenging a jury's verdict based on inconsistency in verdicts, which I'm not claiming the case here, and whether or not the people or the government is allowed to bring forth facts, ultimate facts, regarding whether or not live transmissions were sent over the web in convincing this court that the conviction should stand as the counts 1 through 4 and 7 through 12. And it's a different argument on whether or not these are inconsistent verdicts. For instance, there can be... So, counsel, your red light's been on for a while. You can keep going, but that will mean you'll chew up your rebuttal time. So it's your call which way you go on that. I'll do about 30 seconds more on that, Your Honor. So what I'm arguing, Your Honor, is regarding that particular fundamental fact is that the government should not be allowed to argue that live transmissions were sent and therefore there is sufficient evidence to convict of counts 1 through 5, 7 through 12. And it's interrelated to my venue argument. If all they have left, assuming that I'm correct as a matter of law, that they're precluded, not because it's an inconsistent verdict, but because the jury found him not guilty on those production counts, if the government is precluded from arguing those facts that live transmissions occurred, all they had left in this case were conversations, speech. It's all that was left. And is that enough for interstate commerce? I admit fully that the computers that my client used were transmitted over state lines, but that is so minimal to establish federal jurisdiction. There's a lot of cases that say it's enough. I realize that, Your Honor. I believe those cases are fundamentally unfair. What's happening, in my opinion, in reading the Supreme Court cases, the Supreme Court makes some tough rulings on jurisdiction and then ultimately the circuit courts are left with trying to figure out how those apply in individual cases. And what I'm saying is if that's all you have is essentially computers over state lines and speech over state lines, that should not be enough when the rest of the so-called crime was committed strictly within Michigan. I don't think we have authority to make that change in law. Because of other Sixth Circuit precedent? Yeah. I mean, I also think the Supreme Court cases are pretty hurtful here. And we're obviously the junior varsity court. All right. So the last point I'd like to emphasize is if I'm correct on counts 1 through 12, essentially that they cannot introduce evidence of live transmissions or they cannot use that to convince the court of the sufficiency of the evidence, all you have left is my client's conversations. And they're graphic. They're very sexual in nature. I'm not disputing any of that. Go ahead. How do you know? They can't introduce it. They did introduce it. Now you're saying we should disregard the evidence that was introduced. I am. Is that right? I am, Your Honor. Because of the verdict on the completed offense that the jury did not find it beyond a reasonable doubt and somehow that's an express finding of lack of credibility of the witnesses or whatever, I guess. Just following up on that, how do you know the basis on which the jury acquitted him on that count? It's interesting because if you read the Ash case and the Yeager case, what they say is you have to look at the entire record, figure out exactly what the prosecutor's theory of the case was, and then from that the court is supposed to make a conclusion on what ultimate facts must have been decided. When you're talking about the collateral estoppel type argument under Ash and Yeager, it's different than the inconsistent verdict part of Powell. Fully acknowledge that. But if you look at it that way, there's no way the jury could have found them not guilty of counts 1 through 4, 7 through 12, without finding the ultimate fact that, in fact, live transmissions did not occur. I think that's not a credible argument in any way. The argument is, really, can they actually argue that now? And that's a matter of law for the court to decide, and I believe the court should. Don't you see this really as a compromise verdict by the jury? And juries do that all the time. Even though the evidence was sufficient for the completed offense, that they've got to get unanimous vote on it, and maybe they didn't have it, but they had the unanimous vote for the attempt, so they go with the attempt. I mean, isn't that the most likely explanation? There are multiple explanations. I know, and that's why we cannot determine, we cannot look into the minds of the jury members and say, this is what they found, this is what they did not find, because we don't know. Ash requires the court to do that when a case is re-litigated, and the sole question is whether or not, when a case is directly on appeal, that constitutes re-litigation of those ultimate facts. That's really the sole issue. Ash specifically directs the court to inquire exactly that inquiry if it's not guilty. We're not re-litigating. It was only litigated once. It's being argued now, Your Honor, again, the same ultimate facts. We're not retrying the case. We're deciding your claims of error. I understand that that is the fundamental question of what re-litigation means. I do recognize that. Let me just ask one more question. I hear you saying that you're not arguing inconsistent verdicts, but I also hear you saying that because the jury necessarily found X in its acquittal decision, because X is inconsistent with Y, which is the basis of the other convictions, the other convictions can't stand. No. What I'm saying is get rid of those facts. Evaluate the case on what evidence is left and determine whether or not the type of evidence introduced is the type of evidence that is. . . That assumes the jury didn't engage in nullification, and they do that all the time. And if the court determines that this is a Powell-type issue, I totally agree with what the court is saying. That makes sense to me. It's the right way of analyzing it. I'm saying that I'm not arguing inconsistent verdicts. I'm arguing what is the government allowed to argue and what is the court allowed to consider on those remaining counts if I'm correct that this is a re-litigation because we're at a next stage and they're arguing the facts, and if the court finds it's not a re-litigation. I'm not using the phrase inconsistent verdict. I'm saying juries nullify all the time. So that's why it's wrong to say in assessing sufficiency you have to X out certain things that are linked to what the jury did on a count. Okay? That's just why that's wrong. And I'm saying that it's wrong for the government now to come before this honorable court and argue facts that the jury rejected. That, I think, is fundamentally wrong. That's what disturbs me about this, is that they had an opportunity to argue that these live transmissions occurred. The jury rejected those regardless. There's no way that... How do you know they rejected that? Go back a step. In the Ash version of the analysis, you look at the verdicts. Production, not guilty on every single count. The only theory was live transmissions. The jury found them not guilty of all. The only conclusion is... But you're also not arguing double jeopardy, right? That's a double jeopardy case. It's a double jeopardy case that expanded the meaning of what collateral estoppel is in the context of criminal cases. But what was the interest involved? What's that? What was the interest involved in Ash? The interest involved was a subsequent trial. The interest involved was the protection against double jeopardy. That was the interest involved. And the court was not going to give the prosecutor another chance. Another chance meaning was not going to let the government put him in jeopardy again. That's the interest involved. There's no double jeopardy interest involved here. He's not being tried again. They use this factual analysis as a tool to determine whether the double jeopardy clause had been violated. I agree that that is the factual scenario under which Ash was decided, but I believe it's a more complex issue than just that because now, if I'm correct, the government's allowed to argue facts regarding the live transmissions. And I concede, by the way, that if the court is to consider those facts, the convictions from counts 1 to 4 and 7 through 12, there's sufficient evidence. Do you have a case under Ash or Yeager that is a single jury doing what you're talking about? A single jury. So, in other words, where the court applies this doctrine you're telling us about to the actions of a single jury? There's never been a case that I could find either for or against regarding whether or not the government can argue facts from not guilty verdicts in the appellate court on the remaining counts of conviction. That's really what this comes down to, and I don't have a case on that. Why don't we hear from the government? I think we understand the point, so thank you. Thank you so much. I appreciate it, Your Honors. Yeah. Good morning, Your Honors. Sean Lewis appearing on behalf of the United States. And Judge Sutton, to answer the question that you just asked, Dunn, which I cited in my 28J letter, is a case that addresses a single verdict. The evidence for all three counts charged was exactly the same. The jury acquitted on one of the counts, convicted on another, and the Supreme Court, both in Dunn and then discussing that case in Powell, said it's perfectly fine. You can look at the same evidence. So we do, in fact, have a Supreme Court case with a single jury doing exactly what Mr. Marcou now says the court is not permitted to do. And so I think that, first of all, as I pointed out in my 28J letter, I believe this issue has been waived. It was only raised for the first time in the reply brief. But as a matter of law, in any event, it's incorrect for the reasons that the panel has already pointed out. The rule of decision, if one is to even look at this, is in Powell and Dunn and not in Asche and Yeager. Moreover, even if this analysis could apply here, Judge White, I think that you have identified exactly the issues. How do we know what the jury did? We have no idea. We can sit here. We can guess. We can speculate. But at the end of the day, counsel is incorrect when he says, Asche says that this court has to dig in and find out what the jury did. In fact, as he acknowledges in his own footnote, the burden is on Helland to show with definite assurance a particular fact. In all these cases that he cited, there's only one issue in dispute. The burden is on him to show with definite assurance that the jury found something in his favor. So even he has to clear the waiver hurdle, he has to clear the Powell and Dunn hurdle to even get to his third stage. But he's failed even if he can get there. And I submit, as a matter of law, he cannot do that. So I think that that argument simply has no legs to it. Of course, the inquiry into what the jury really did is potentially quite perilous to defendants. If you didn't have the double jeopardy clause, courts of appeals could decide the mistake was on the acquittal side, not the conviction side. The fact that it's asymmetric has been incredibly helpful to criminal defendants all along, but that asymmetry doesn't prohibit courts of appeals from looking at whether there's still sufficient evidence for the conviction counts. That is correct. And that was the exact point that the Supreme Court made in Powell, that it's unclear whose ox has been gored. In this case, if anybody suffered, it was the victims in this case. I agree, Judge Griffin, it does appear this is simply a compromise verdict. And as Powell pointed out, the government has no recourse. I can't appeal what the jury did in terms of reaching a compromise verdict. The sole avenue of relief is to look at all of the evidence and see is there sufficient evidence for what the jury did convict on. And as counsel has conceded. So what do you say about his warrant point? Well, Your Honor, I would say that first of all, the court is correct that as a practical matter, purely theoretical, the warrant doesn't have to get way down into the weeds exactly where particular records are held within a company like Yahoo. So as a legal matter, his premise is incorrect. But if the court actually looks at the facts of this case and what the warrant was looking for, it is not as limited in terms of what the warrant was seeking as the defendant suggests. It was looking for a broad array of information related to the JimmyAB2010 account, the defendant's account, for information including who it belonged to, how he was trafficking in child pornography, and Yahoo Messenger-related information. And so it's, first of all... I was curious if you were going to challenge his premise that there was nothing in the warrant about preservation. Absolutely. Because if there is, that's the simplest answer. There is. In that continuation or the search warrant affidavit, the agent did point out, here's what providers generally keep. Here's what Yahoo in particular keeps. I submitted a preservation letter. And then on page 15 of that search warrant application affidavit, the agent laid out in great detail the type of information that Yahoo keeps or may keep, and this came directly from their compliance guide. She quoted it. And there's an entire paragraph in here about Yahoo Messenger and the types of material that Yahoo keeps or may have available, including archives of web messenger communications, the very type of information that he says there's absolutely no evidence that they keep it. That's just factually incorrect. It's right here on page 15 of the application. And the district court found, in carefully examining this application, that the agent had laid out specifics about how electronic service providers generally keep information and specifically how Yahoo kept information. The judge went so far as to find that the defendant had utterly failed. That's a quote to meet his burden on this. And the defendant simply makes the same arguments to this court that don't have a solid basis in law or, more importantly, in fact, because that's an easy way to resolve it. This is a very detailed application. It's specific to electronic service providers generally and to Yahoo very, very specifically, including the areas of Yahoo Messenger that the defendant is challenging here. Okay. Well, I think those are fair answers to his points. We appreciate it. Thank you, Your Honor. Thank you, Mr. Lewis. Mr. Marcoux, was your time used up? Was it? Well, if you want to just go ahead and if you've got a response to his two points. I mean, so first of all, he's saying factually in the warrant, page 15, the key premise of your argument is missing. So what's your answer to that? It does not say on page 15 that, in fact, chats and things are routinely preserved. I'm sorry, that are ever kept. That, yes, Yahoo Messenger does have, that they do keep information in Yahoo Messenger, but that could be usage, not actual communications, videos. What I'm talking about is did they ever exist in any kind of stored data, and I don't believe that that paragraph 15 says that, Your Honor, and that's why I've continued to raise that argument. Okay. We'll take a look at it. And then regarding the other argument, Your Honor, the Dunn-Powell versus Ash-Yeager, the Dunn and Powell involve cases where the courts are not supposed to inquire where verdicts are necessarily inconsistent, necessarily inconsistent. I'm not claiming they're necessarily inconsistent. All I'm claiming is what right does a government have, when a jury has reached a certain verdict, on appeal, what right do they have to argue facts that are part of not guilty verdicts? It's a separate legal concept. It sure seems like Powell and Dunn aren't against that argument. I believe they're not. I don't believe they're even on. I don't believe that they are in the same ballpark. This is just a silence point. No one's really talked about this, and you want us to go out and do something on this. That's exactly right. What I'm saying is look at Ash and Yeager, read the rationales of those cases, and determine whether or not the government is allowed under those cases to argue ultimate facts on those two arguments that I've made. Thank you. All right. Thanks to both of you for your helpful arguments and briefs. We appreciate it. The case will be submitted, and the clerk may call the second case.